## Samuel Heyman v. Rebecca Heyman.

### Gen. No. 11,427.

1. DECREE—*when, final for purposes of appeal.* A decree which fixes the right of a party to receive from the assets of a copartnership estate a sum named therein, and which leaves nothing to be done but its execution in the event of its affirmance, is final and appealable.

2. AMENDMENT—*how question of power of court to make, raised.* The action of the court in amending a decree should be questioned upon the appeal from the decree so amended.

3. APPEAL—*effect of, to stay proceedings.* A perfected appeal operates as a supersedeas under the judgment or decree appealed from.

4. APPEAL—*effect of, to stay proceedings under a decree ordering a reference and appointing a receiver, etc.* An appeal perfected from such a decree operates by way of supersedeas and the master can neither proceed under the reference nor can the receiver take possession of the property committed to his custody.

Bill for accounting and receiver, etc. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Reversed and remanded. Opinion filed January 6, 1905.

**Statement by the Court.** July 1, 1902, a decree was entered in the Circuit Court in this cause, from which an appeal was taken by the present appellant to this court and upon the affirmance of the decree here, he prosecuted an appeal to the Supreme Court, and the judgment of this court was there affirmed June 23, 1904. Heyman v. Heyman, 110 Ill. App. 87; s. c., 210 Ill. 524. The decree referred to finds, *inter alia,* that the parties hereto were equal partners in a certain business theretofore conducted by appellant; that appellee was entitled to be repaid out of the partnership assets the sum of $5,600 and was entitled to have and receive one-half of the remaining assets of the

partnership. The decree further provided that the cause be referred to a master in chancery to ascertain and report to the court a schedule and inventory of the assets and property belonging to the copartnership on December 7, 1900, appointed a receiver of the partnership assets and property and ordered appellant to assign and transfer said assets and property to the receiver. The defendant perfected his appeal from the decree by giving an appeal bond July 3, 1902. July 13, 1902, a day of the term at which the decree was so entered, the court made an order in the cause that the decree be amended by striking therefrom certain words. The master began to take testimony for the complainant under the order of reference July 14, 1902. The term of office of the master to whom the cause was referred expired November 29, 1902, and January 5, 1903, the former master was appointed a special master in the cause to proceed with the reference. June 6, the proofs for the complainant being closed, the special master entered a rule on the defendant to close proofs by June 11. The special master prepared a report dated June 15, to which the defendant filed exceptions June 16, which were on the same day overruled by the special master. The special master's report was then filed and the court ordered that the objections taken before the master stand as exceptions in the Circuit Court. The decree entered June 19, 1903, overrules the exceptions to the report of the master and confirms his report. The decree then finds that the value of the assets of the copartnership between the parties hereto on December 7, 1900, was $110,000; that out of said sum the complainant is entitled, first, to have repaid to her $5,600; that of the remainder, $104,400, complainant is entitled to have and receive one-half, or $52,200, making a total sum of $57,800, which complainant is equitably entitled to have and receive out of the assets of the copartnership. From this decree the defendant prosecutes this appeal.

THORNTON & CHANCELLOR, for appellant.

ALEXANDER SULLIVAN and GEORGE W. PLUMMER, for appellee; WHARTON PLUMMER, of counsel.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

Appellee has moved to dismiss the appeal upon the ground that the decree appealed from is not final and therefore not appealable. The decree finally fixed the right of appellee to have and receive from the assets of the copartnership between the parties hereto the sum of $57,800. If it shall be affirmed the Circuit Court will have nothing to do but to execute that decree. Such a decree has always been regarded as so far final that it may be reviewed on appeal or writ of error. Allison v. Drake, 145 Ill. 500; Myer v. Manny, 63 Ill. 211. The motion to dismiss the appeal will be denied.

It is contended by appellant that the Circuit Court erred in entering the order of July 12, 1902, that the decree which was entered July 1, and from which the former appeal was perfected July 3, be amended by striking out certain words, upon the ground that after the appeal was perfected the court had no jurisdiction or authority to alter or amend the decree. This question is not, in our opinion, before us on this appeal. The Circuit Court at the term at which the former decree was entered made an order that the decree be amended. The question of the power or authority of the court to make such order might and should have been raised upon the appeal from the decree which was by the terms of the order amended.

The order of reference to the master and the order appointing a receiver were made in the decree of July 1, 1902, from which, as has been said, the defendant perfected an appeal July 3, 1902. Notwithstanding such appeal the master proceeded to take testimony and make his final report in the cause; the receiver took possession of the assets of the copartnership which the decree found existed between the parties hereto and made a sale thereof, and the court entered in the cause numerous orders for the payment of money and finally entered the decree from which this appeal was taken.

The first assignment of error brings before us the ques-

tion of the right and authority of the court, and of its master and its receiver to proceed in the cause, over the objection of the defendant, after his appeal from the decree of July 1, 1902, had been perfected. Counsel for appellee cite in support of the right thus to proceed after appeal, 2 Daniell's Chan. Prac. 1467, where it is said that "An appeal does not stay or hinder proceedings on the decree or order appealed from, unless by special order of the court; but the person in possession of any decree or order is at liberty to proceed thereon as if no appeal or rehearing had been granted;" and also Ratzer v. Ratzer, 29 N. J. Eq. 162, where it is said that "The rule seems to be definitely settled that an account will not be stayed pending an appeal." The rule quoted from 2 Daniell's Chan. Prac. correctly states the English practice. In Hovey v. McDonald, 109 U. S. 150–160, it is said: "In England until the year 1772 an appeal from an order in chancery suspended all proceedings, but since that time a contrary rule has prevailed there. The subject was reviewed by the House of Lords in 1807, and an order was made establishing the right of the chancellor to determine whether and how far an appeal should be suspensive of proceedings, subject to the order of the House on the same subject, 15 Vesey 184." In Nerot v. Burnand, 2 Russell 56, Lord Eldon said: "Generally speaking the court never stays the account." In that case the existence of the partnership claimed by complainant was denied by the defendant. The decree was in favor of the complainant and directed that the property which was in possession of the defendant be sold and the chancellor, while refusing to stay the account did stay the other proceedings directed by the decree. The decision in Ratzer v. Ratzer, *supra*, is based upon a rule of court similar to that of the House of Lords. In that case the vicechancellor said: "Under the rules of this court nothing short of an order of this court or the court of errors and appeals will arrest the account (Rule 20)." In New York prior to the adoption of the Revised Statutes the appeal suspended proceedings in the first instance, but the chan-

cellor might give the successful party leave to proceed under the decree notwithstanding the appeal. Hart v. Mayor of Albany, 3 Paige, Ch., 381. The decisions in jurisdictions where no appeal from a decree suspends proceedings without an order of the chancellor or of the reviewing court that it shall have that effect, can throw no light upon the question under consideration. The right of appeal is a statutory right. The statutes of this state have from the earliest days provided for appeals from judgments at law as well as decrees in chancery, and there is an unbroken line of decisions to the effect that á perfected appeal operates as a supersedeas or stay of proceedings under the judgment or decree. Ex parte Thatcher, 2 Gil. 167; Ambrose v. Weed, 11 Ill. 488; Jenkins v. Jenkins, 91 Ill. 167; People ex rel. v. Prendergast, 117 Ill. 588; Smith v. Chytraus, 152 Ill. 664; Elzas v. Elzas, 183 Ill. 160; Harris v. The People, 66 Ill. App. 306; Continental I. & L. Co. v. McKay, 69 Ill. App. 72.

Section 15 of the Divorce Statute provides that in case of appeal or writ of error by the husband from a decree of divorce the court in which the decree is rendered may award the wife alimony and money for her defense pending the appeal. In Jenkins v. Jenkins, *supra*, Chief Justice Craig said, that but for the section of the statute above referred to, the Circuit Court would have no right after appeal to require the husband to pay solicitors' fees. In Elzas v. Elzas, *supra*, Mr. Justice Boggs said : " The statute has created an exception in cases of divorce, to the general rule that the consummation of an appeal deprives the court wherein the decree appealed from was rendered, of power or jurisdiction to enter further orders or decrees in the case." In People ex rel. v. Prendergast, *supra*, the County Court refused to allow the relator an appeal from an order to pay over certain money and committed him for contempt in refusing to obey the order of the court. The Supreme Court granted the relator a writ of mandamus to compel the judge of the County Court to allow the appeal of relator. In the opinion in that case Mr. Justice Scott

said: "Had the appeal been allowed, as it should have been, from the decree rendered on the 5th of December, and had the same been perfected by giving such bond as the court might have regarded as sufficient, which, no doubt, would have been done at once, that would have suspended all further proceedings in the cause, and no order could therefore have been made committing relator for a non-compliance with the decree of the court, until after the determination of the appeal. So now, when the appeal shall be allowed and perfected, under the statute, from the decree of the court made on the 5th of December, 1884, that of itself will suspend all further proceedings under the order committing relator, made on the 6th of December, 1884, and it is a matter of no consequence whether relator can have an appeal from the latter order or not." In Smith v. Chytraus, *supra*, the decree provided that the complainant should within sixty days from the date of the decree pay a certain sum of money and that on his failure to do so his bill of complaint should be dismissed. The defendants prayed, were allowed and perfected an appeal to this court. They also sued out in the Supreme Court a writ of error upon which the decree was affirmed. The defendants then dismissed their appeal to this court and forty-two days thereafter the Circuit Court dismissed the bill of complaint upon the ground that the complainant had not paid said sum of money within sixty days from the date of the decree. The decree dismissing the bill was reversed by the Supreme Court upon the ground that the running of the sixty days given to the complainant to pay the money was suspended by the appeal to this court until the dismissal of the appeal, and the decree appealed from was entered only forty-two days after the dismissal of the appeal. In the opinion in that case Mr. Justice Baker said: "Our conclusion, then, is, that the appeal herein to the Appellate Court, even though granted to a tribunal that had no jurisdiction to entertain it, operated for the time being, as an appeal, and became a *supersedeas*, and temporarily stayed all proceedings whatever to enforce

the execution of the decree." In Harris v. The People,
*supra*, upon a bill filed by the attorney general in the
name of the People against a loan association, a decree was
entered in the Circuit Court for the dissolution of the cor-
poration and the appointment of a receiver of its property
and assets and the defendant prayed and was allowed an
appeal from the decree to the Supreme Court. This ap-
peal was perfected by the filing of a bond April 8, 1896.
April 16, the receiver demanded possession of the property
and assets of the corporation of Harris, its secretary, who
refused to deliver the same to him. In answer to a rule to
show cause Harris set up the appeal from the decree by
the defendant. The Circuit Court found him guilty of con-
tempt of court in thus refusing to deliver said assets to the
receiver and ordered that he be committed to the county
jail until he signified his willingness to turn over said
property and assets to the receiver, and further ordered
that the said Harris be enjoined from transacting any busi-
ness whatever in behalf of the corporation, and from this
order Harris appealed. Here, the order, as well that por-
tion enjoining appellant as that committing him to jail,
was reversed upon the ground that the appeal operated as
a stay of all proceedings under the decree and the court
could not after the appeal compel the corporation to yield
possession of its property to the receiver, nor enjoin its sec-
retary from discharging his duties as secretary. The opin-
ion of Mr. Justice Waterman in the case last cited contains
a history of chancery appeals in England from 1581, when
such appeals were first allowed, and a review of the author-
ities, both English and American, as to the effect of such
appeals as a supersedeas, or stay of proceedings. In the
case brought by the attorney general mentioned in the case
last cited, the Circuit Court, before the final decree, ap-
pointed Aaron McKay to investigate the affairs of the
association and report to the court his findings. McKay
filed his report April 8, 1896, after the final decree in
the cause had been entered and the appeal therefrom per-
fected. August 8, 1896, the Circuit Court ordered that

McKay be paid $500 for his services in making such investigation and report. Upon appeal from the order by the association, the order was reversed upon the ground that the Circuit Court had no jurisdiction to make such order while the appeal from the final decree was pending in the Supreme Court. Continental I. & L. Society v. McKay, *supra*.

The appeal of July 1, 1902, was from the entire decree; from that part of it appointing a receiver and ordering a reference to the master, as well as from that part of it which granted complainant a divorce and found a partnership between her and her husband. That appeal suspended all proceedings under the decree, leaving the matters in the condition in which they were when the appeal was perfected. It took away from the Circuit Court all jurisdiction or authority to take further steps in the cause except as authorized by section 15 of the Divorce Statute. After the filing of the appeal bond the master could not proceed under the order of reference, nor could the receiver take possession of the property or assets of the partnership, nor sell the property, if any, of which he took possession before the bond was filed.

The decree of the Circuit Court will be reversed and the cause remanded for further proceedings not inconsistent with the views stated in this opinion.

*Reversed and remanded.*