## Jesse O. Steele v. John P. Hohenadel.

## Gen. No. 13,871.

1. DECREE—*when rule that, must be supported by specific findings or evidence does not apply.* A consent decree need not be supported by specific findings of fact or by evidence preserved by a certificate of evidence.

2. CHILDREN—*consideration determining custody of.* When the question involved is the custody of an infant, the prime consideration, and that which takes precedence of all other considerations, is the welfare of the infant. When a guardian has been appointed and circumstances have so changed since the appointment as to make it to the infant's interest that a different guardian be appointed, a court of chancery has ample power to make the change and will not hesitate to remove the former guardian and appoint another.

3. CHILDREN—*who natural guardian.* The father is the natural guardian of his infant child and his right to its custody is *prima facie* before that of all others.

4. APPEALS AND ERRORS—*effect of appeal upon decree appointing guardian and awarding custody of child.* The sole effect of an appeal appointing a guardian and awarding the custody of a child is to suspend its operation pending the determination of the appeal.

5. JURISDICTION—*when court without power with respect to appointment of guardian and awarding of custody of child.* Where a decree has been entered appointing a guardian and awarding the custody of the child and has been appealed from and the appeal perfected, the court which rendered such decree is without juris-

diction to enforce the provisions of a former decree which is changed by the provisions of the decree appealed from.

6. CONTEMPT—*when punishment for, erroneous.* Where a writ is issued ordering that a party be brought into court to show cause, if any he has, why he should not be committed for contempt, it is error to refuse to permit him to answer and show cause, if any he has.

Bill in chancery. Error to the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1907. Reversed. Opinion filed May 18, 1908.

**Statement by the Court.** May 14, 1906, John P. Hohenadel, defendant in error, filed a bill against Jesse O. Steele, plaintiff in error, averring, in substance, that his daughter, Julia A. Steele, wife of Jesse O. Steele, died April 29, 1906, leaving her surviving, as issue of her marriage with Jesse O. Steele, Elizabeth Vinni Steele, who will be four years old July 20, 1906. It is then averred that the defendant, Jesse O. Steele, shortly after his marriage, commenced to ill-treat his said wife, and continued so to do till April 10, 1906, frequently striking and beating her; also that he ill-treated said child, Elizabeth Vinni Steele, slapped her on several occasions and struck her with a leather strap. April 7, 1906, defendant struck his said wife, ordered her to leave his house and take her said child with her, and said that if she would not have so left by April 15, 1906, he would forcibly eject her and her child. Julia Steele thereupon left defendant's residence, taking with her her said child, and came to complainant's home, where she remained till the time of her death, and since April 10, 1906, said child has remained in complainant's family and has been properly cared for. Then follow averments of facts intended to show that defendant is not a proper person to have the custody of the child. The bill avers that the child has a small personal estate, $250, the proceeds of an insurance policy. The bill prays that complainant be appointed guardian of the child, and for general relief. It is unnecessary to refer to the bill

more particularly, for reasons which will hereafter appear. The defendant, plaintiff in error here, answered the bill, denying all its material allegations in respect to his unfitness to have the custody of the child, and filed a cross-bill, which the complainant answered. Replications were filed to the answer to the bill and the answer to the cross-bill. The cause was referred to a master to take proofs and report the same, with his conclusion thereon. The master made a report, which, omitting the preliminary formal part, is as follows:

"I beg to further report that upon the conclusion of the evidence, and during the arguments of counsel thereon, I took the liberty of suggesting to the parties and their counsel that it appeared to be for the best interest of the child, Elizabeth Vinni Steele, who was the subject of their unfortunate contentions, that they attempt to reach an amicable agreement regarding the custody, care and maintenance of said child; that thereupon the parties agreed to a disposition of said case in the manner set forth in the draft of a decree submitted with this report, which bears the O. K. of the solicitors for the parties, and also bears the evidence of my examination and approval thereof. Said solicitors thereupon stipulated that, in view of the agreement thus reached, the testimony introduced before me, which, pursuant to a stipulation of said parties, was taken down in shorthand by a court reporter, to be thereafter transcribed, should not be transcribed, so as to save unnecessary expense, and that in place of making a formal report of my findings of fact and law upon the evidence introduced, I should merely report to the court as to whether the agreement reached between the parties should be approved by the court. Accordingly, I herewith report that I find it to be for the best interest of the said child, Elizabeth Vinni Steele, that said agreement be approved by the court, and I therefore recommend that

the decree hereinabove referred to and submitted herewith be entered."

June 16, 1906, the court, the Hon. Charles M. Walker presiding, rendered a decree, in which, after reciting that the cause came on to be heard on the pleadings and the master's report, the master's report is approved, the court finds that it has jurisdiction, and that it is for the best interest of the child that she remain, until her majority, under the joint guardianship of complainant and cross-complainant, and that her home, during her minority, be with John P. Hohenadel, and that the cost of caring for her be jointly borne by John P. Hohenadel and Jesse O. Steele. The decree then proceeds as follows:

"It is decreed that John P. Hohenadel and Jesse O. Steele be appointed joint guardians of the person of said child until her majority, and that the home of their ward shall be in the home of said John P. Hohenadel until her majority; that when said child shall arrive at the proper age, not prior to her sixth birthday, she shall be placed in a Roman Catholic school, and attend until eight years of age, when she shall be sent to the boarding school known as the Christian Sisters of Charity, the Josephenum, or some similar Roman Catholic boarding school, to be selected by said guardians, and the expense shall be borne by both; that Jesse O. Steele shall, commencing July 20, 1906, have the right and privilege to take said child from her home with John P. Hohenadel to his home or elsewhere within the jurisdiction of this court, and retain her in his custody, care and control for a period not exceeding thirty days, and then to return her to the home of John P. Hohenadel, and afterwards to call again and take her for a like visit to his home or to the country in the summer time, not exceeding thirty days' duration; after thirty days shall have expired from the time of the preceding visit of said child, and so to continue until said ward at-

Steele v. Hohenadel.

tains her majority; that John P. Hohenadel shall have the right to take said child for six or seven weeks during July and August of each year into the country, the time to be selected after a visit to the father; that the provision as to said visit shall not apply when said child shall be attending any boarding school; that when attending such parochial school Jesse O. Steele shall have the right to take said child to his home on the first and third Saturday and Sunday in each month, and shall safely return her to her home with John P. Hohenadel on or before the evening of each Sunday on each of said visits; that said guardians shall have the right to visit said child at all times; that said child shall not be removed from the jurisdiction of the court, except for said summer vacations, without the consent of each of said guardians; that upon the death of either, the guardian surviving shall be the sole guardian; that the costs be taxed one-half against each party.''

April 18, 1907, Jesse O. Steele filed a petition praying that the decree of June 16, 1906, be changed and modified so as to give him the sole custody of the child. The court dismissed this petition; but gave leave to the petitioner to file an amended petition within five days, and June 27, 1907, he filed, by leave of court, an amended petition.  The petition avers, in substance, that it is averred in the original bill that John P. Hohenadel is a widower and has living with him his mother, two daughters and a son, who are devotedly attached to the child, and that petitioner is an electrician, and has no home or female relatives in Chicago who could give proper care and attention to the child.  Since July 16, 1906, John P. Hohenadel's mother has ceased to live with him, and now resides elsewhere, and the child's care is now confined to Hohenadel's unmarried daughters, and he is away from home every day from morning till evening, except on Sunday, etc.  The petition is quite lengthy, and avers reasons why the petitioner should have the sole cus-

tody of the child, and prays that the decree of June 16, 1906, may be so changed that he may have such custody. The petition is verified by the oath of the petitioner. Hohenadel answered the petition under oath. Numerous affidavits were filed in support of the petition and also in support of the answer, and May 14, 1907, the cause was heard on the petition, answer thereto, and affidavits, and the court, the Hon. Thomas G. Windes, presiding found and decreed as follows:

"And the court having heard read in evidence the sworn amended petition of Jesse O. Steele, and the sworn answer thereto of John P. Hohenadel, and affidavits in support of said amended petition and answer, and having considered the matter, and being fully advised in the premises, doth find: That since June 16, A. D. 1906, there hath been a material change in the situation of the parties in the above entitled cause, and in the situation of the said Elizabeth V. Steele, the ward of this court, in the above entitled cause; that since the entering of the order or decree herein, on June 16, A. D. 1906, appointing John P. Hohenadel and Jesse O. Steele joint guardians of Elizabeth V. Steele, and awarding the partial custody of said child to John P. Hohenadel, the mother of the said John P. Hohenadel has ceased to reside continuously with him, and that the said mother of John P. Hohenadel has not been an inmate of his home, and has not been a member of the household or resided in the home of said John P. Hohenadel since the month of July, A. D. 1906; and that her place of abode has been elsewhere and other than the home of the said John P. Hohenadel, and is so at the present time; that there has been a further change in that since the month of July, A. D. 1906, the said Jesse O. Steele has had and now has residing with him, and occupying the house with him and making their residence and home with him, his mother, Elizabeth Steele, and his sister, Vénie Oletto Steele.

Further the court doth find that under the said de-

cree entered herein June 16, 1906, the said Jesse O. Steele has had possession and custody of said Elizabeth V. Steele each alternate thirty days, and that the balance of said time she has been in the home of said John P. Hohenadel; and that said Elizabeth V. Steele is a child of tender years, to-wit: less than five years of age, and that it interferes with her education and discipline; that it is prejudicial and detrimental to her interest that she be in the custody of two different persons alternately, as provided for in the said decree of June 16, 1906.

Further this court doth find from the evidence that Jesse O. Steele, the surviving parent of the said Elizabeth V. Steele, is now a competent person to transact his own business, and is a fit and proper person to be entitled to the custody of the person, and the care, control and education of said Elizabeth V. Steele; that he is now maintaining a suitable home for his said child; that he loves said child, is kind to her, and is by temperament and intelligence a fit person for her to be associated with; that he is able to suitably provide her with necessary clothing and food, and provide for her care and custody and for her education, and that the best interests of said Elizabeth V. Steele require that she should be under the sole care and custody of her father, Jesse O. Steele, and that she should be and remain in his home continuously and under his sole care and guidance, direction and control.

Wherefore, it is ordered, adjudged and decreed that the order or decree entered in the above entitled cause on June 16, A. D. 1906, be modified and vacated insofar as it provides that the home of Elizabeth V. Steele during her minority should be with and in the family of John P. Hohenadel, or in any home or school other than the home of Jesse O. Steele; and it is ordered and decreed that it is for the best interests of said child, Elizabeth V. Steele, that her home and permanent place of abode be with and in the family of Jesse

O. Steele, her father; further it is ordered, adjudged and decreed that the said Jesse O. Steele have the sole care, custody, education and control of said Elizabeth V. Steele, and of her person, and that she remain and reside and have her permanent abode in the home of said Jesse O. Steele until the further order of this court.

Further it is ordered, adjudged and decreed that all other parts of the said order or decree of June 16, A. D. 1906, insofar as they conflict with the provisions of this order entered herein, be modified or annulled."

June 24, 1907, John P. Hohenadel filed a petition, addressed to the Hon. Thomas G. Windes, for the custody of the child, in pursuance of the decree of June 16, 1906, which petition the court, Judge Windes presiding, dismissed.

July 18, 1907, Hohenadel, defendant in error, filed another petition in the Circuit Court, addressed to the Hon. Richard S. Tuthill, in which, after stating the decrees of June 16, 1906, and May 14, 1907, it is averred that petitioner prayed and was allowed an appeal from the decree of May 14, 1907, and that, at the time the order allowing the appeal was entered, it was stated in open court, and was understood by the parties, that the decree of June 16, 1906, should remain in force, notwithstanding the order modifying the same, until the appeal should be determined by the Appellate Court, and a provision was inserted in the appeal bond requiring compliance with the decree of June 16, 1906, pending the appeal, and said appeal bond was approved and filed May 18, 1907, and a certificate of evidence was signed and filed June 12, 1907. It is then averred in the petition substantially as follows: May 14, 1907, said child was in petitioner's custody and so remained till June 16, 1907, when Steele took possession of her, and it was the duty of said Steele, under the decree of June 16, 1906, to return said child to petitioner June 16, 1907, which he refused to do, and retains the custody of the child, and

declares his intention not to return her to petitioner. The decree of July 16, 1906, is in full force and effect, and the delivery of the child by petitioner to Steele was solely in obedience to said decree. Petitioner prays for an order directing said Steele to return the child to him, etc. The petition was sworn to by petitioner, and is substantially the same as the petition filed June 24, 1907, which was dismissed by Judge Windes.

July 18, 1907, the day the petition was filed, the following order was made by the court, Judge Tuthill presiding: "On hearing the petition of said Hohenadel, this day filed, it is ordered that the said defendant, Steele, forthwith deliver the child Elizabeth to said Hohenadel, to be held in the custody of said Hohenadel as provided in the decree entered herein on June 16, 1906, until the Appellate Court render its decision on the appeal taken from the order modifying the original decree."

July 19, 1907, the court entered an order, in which, after reciting that Jesse O. Steele had been served with a copy of the order of July 18, 1907, and that he had wilfully failed and refused to comply with it, it is ordered as follows: "It is therefore ordered that said Jesse O. Steele stands in contempt of this court, and it is further ordered that a writ of attachment issue out of this court, directed to the sheriff of this county to execute, commanding him that he bring the body of said Jesse O. Steele before the bar of this court to show cause, if any he has, why he should not be punished for contempt of this court in wilfully failing and refusing to comply with said order of this court entered herein on June 18, A. D. 1907.

It is further ordered that the said John Hohenadel take possession of said child, Elizabeth Vinni Steele, and have the care, custody and control of said child, Elizabeth Vinni Steele, until the further order of this court."

On the same day, July 19, 1907, the court entered

an order in which, after reciting that the cause came on to be heard on the writ of attachment served on Jesse O. Steele, who was present in court, the court finds that said Steele wilfully refused to obey the order of July 18, 1907, and that he is no longer fit to be guardian of the child, and orders as follows: "It is therefore ordered and adjudged that said Jesse O. Steele is in contempt of this court for wilfully refusing to obey said order of July 18, 1907. It is further ordered and adjudged by the court, and the court hereby orders and adjudges, that the said Jesse O. Steele be committed to the common jail of said Cook county, there to remain for the term of thirty days, unless sooner discharged by law, for his said contempt of this court and wilfully refusing to comply with and obey the order of this court entered herein July 18, 1907."

WILLIAM SLACK and JACOB C. LeBOSKY, for plaintiff in error.

TODD & MORRISON, for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

Plaintiff in error has assigned errors and defendant in error has assigned cross-errors.

The propositions advanced and argued by counsel for plaintiff in error are: That the decree of June 16, 1906, is erroneous and should be reversed; that the decree of May 14, 1907, is correct; that the order of June 18, 1907, rendered on the petition of defendant in error, is void for want of jurisdiction, and because the right to answer was denied; and that the order committing plaintiff in error to prison is void.

Counsel for plaintiff in error argue that the decree of June 16, 1906, is erroneous and must be reversed, because it is neither supported by specific findings of fact in the decree, or by evidence preserved by a certificate of evidence, citing cases. It is the general rule

that a decree must be supported in at least one of the ways mentioned; but, manifestly, the rule cannot apply to a decree by consent, in a case in which the court has jurisdiction, and the jurisdiction of the court in the present case is not questioned and cannot be successfully questioned. Cowles v. Cowles, 3 Gilman 435; Ames v. Ames, 148 *ib.* 321, 338; Ames v. Ames, 151 *ib.* 280.

Counsel object further that it is impossible to determine from the record whether the decree recommended by the master is the decree entered by the court. We dissent from this view. The decree recommended by the master is a part of his report, and is identified by the O. K. of the solicitors for the parties. The master says in his report, "Thereupon the parties agreed to a disposition of said case in the manner set forth in the draft of a decree submitted with this report, which bears the O. K. of the solicitors for the parties, and also bears the evidence of my examination and approval thereof." Add to this that both of the parties admit their consent to the decree and both acted in pursuance of and as ordered by it, until the rendition of the decree of May 14, 1907. Plaintiff in error Steele, in his affidavit in support of his amended petition for a change of the decree of June 16, 1906, says of that decree, "that he was, then and there, induced to enter into some verbal arrangement respecting the custody of said child; that this was done on the solicitation of the master in chancery, and that this arrangement was entered into by this affiant in the fear that he might be wholly deprived of the association of his said child, and was upon the assurance that any arrangement then made would be subject to the revision of this honorable court at any time thereafter."

Defendant in error, in his answer to the amended petition of plaintiff in error, filed May 11, 1907, says, "That upon the said order of reference, the parties to said original bill and cross-bill appeared before the said master and submitted a draft of a decree, which

had been agreed upon between them, to said master, which was approved by said master, and the said parties then and there agreed, before the said master, that the substance of said agreement should be embodied in the report of said master and filed in this court as the report of the master in this cause; all of which fully appears from the master's report filed herein. This respondent, further answering, says that on the sixteenth day of June said final decree was duly entered in this cause, and is now in full force and effect.'' We do not think counsel for plaintiff in error are in a position to question the validity of the decree of June 16, 1906, and we cannot perceive how plaintiff in error is interested in questioning it, inasmuch as he relies on the decree of May 14, 1907, which grants to him the custody of the child. While counsel for plaintiff in error insist that the decree of May 14, 1907, is valid, counsel for defendant in error have assigned that it is erroneous, and have so argued.

Counsel for defendant in error do not question the jurisdiction of the court to modify or change the decree of June 16, 1906. When the question involved is the custody of an infant, the prime consideration, and that which takes precedence of all other considerations, is the welfare of the infant (Petition of Smith, 13 Ill. 138), and when a guardian has been appointed, and circumstances have so changed since the appointment as to make it the infant's interest that a different guardian shall be appointed, a court of chancery has ample power to make the change, and will not hesitate to remove the former guardian and appoint another. In Carmack v. Marshall, 211 Ill. 512, 525, cited by counsel for defendant in error, the court quote with approval this language from Spelling on Extraordinary Relief: ''An application for the writ will be denied, in the absence of new and subsequent facts being presented, by which the state of the case, or the relative claims of the parents to the custody of the child, are altered in some material respect. Where, however,

new and important facts can be presented, there is no estoppel upon a second or an indefinite number of applications, even in the cases of children.'' This is said in respect to writs of *habeas corpus* involving the question of the custody of infants, but is equally applicable to such cases as the present. Cowles v. Cowles, 3 Gilm. 435, 441, is to the same effect.

We do not understand counsel for defendant in error to question the law as stated; but they say there was no substantial change of conditions to warrant the change of the custody of the infant made by the decree of May 14, 1907.

The petition of plaintiff in error filed April 27, 1907, sets forth a substantial change in conditions affecting the interest of the infant, and the affidavits in support of the petition tend to prove its averments, and while it is true that the affidavits in support of and against the petition are conflicting, it was for the court to decide in this conflict of evidence, and we cannot say that the court's finding is manifestly against the weight of the evidence. The father is the natural guardian of his infant child, and his right to its custody is *prima facie* before that of all others. 2 Bishop on Marriage, Divorce and Separation, sec. 1162. ''As to the control of the person of a minor, the father is guardian by nature.'' Perry v. Carmichael, 95 Ill. 519, 530. This *prima facie* right of the father may, however, be forfeited by misconduct, or by his being or becoming an unfit person to have the custody of the child, the interest of the child being always the primary consideration. Bishop on Marriage, Divorce and Separation, sec. 1163; Schouler's Domestic Relations, 3d ed., sec. 248.

In the present case the chancellor was, as we think, warranted by the evidence in finding that plaintiff in error was a fit person to have the custody of the child, and that it is for the child's interest to remain with her father. Counsel for defendant in error say: ''The appeal of Hohenadel, the grandfather, from the decree

of May 14, 1907, did not act as a *supersedeas* on the decree of June 16, 1906, but left that decree in full force and effect, as a determination of the rights of the father and grandfather, and did not affect the *status* of the child as a ward of the court, or the *status* of Steele, the father, as a guardian jointly with Hohenadel, the grandfather.'' In another part of the argument of the same counsel they say of the decree of May 14, 1907, it ''nullified the decree of June 16, 1906, divested Hohenadel from all share in the custody of the child, as provided in the decree of June 16, 1906, and gave to Steele the entire custody of the child.'' This is unquestionably true, and the question is, whether the appeal of defendant in error from the decree of May 14, 1907, changed in anything the effect of that decree on the decree of June 16, 1906, so succinctly described by counsel. We are of opinion that it did not. The sole effect of the appeal was to suspend further proceedings under the decree of May 14, 1907, pending the appeal. The decree was not vacated, nor was its effect in any way changed by the appeal. Dawson v. Cunning, 50 Ill. App. 286; Bank of Commerce v. Franklin, 88 *ib.* 198; Oakes v. Williams, 107 Ill. 154; Walker v. Doane, 108 *ib.* 236; Shirk v. Gravel Road Co., 110 *ib.* 661; Moore v. Williams, 132 Ill. 589.

The petition of defendant in error filed July 18, 1907, was, in substance, that the court would enforce the provisions of the decree of June 16, 1906, in respect to the joint guardianship of the child, and so the court understood the petition, as evidenced by the order granting it. The petition is substantially the same as that filed by defendant in error June 24, 1907, and which the court, Judges Windes presiding, dismissed.

The appeal bond of the defendant in error, on the appeal from the decree of May 14, 1907, was filed and approved May 18, 1907. Instantly, on the approval and filing of the appeal bond, the cause was pending in this court. Owens v. McKethe, 5 Gilman 79; Rey-

nolds v. Perry, 11 Ill. 534; Swafford v. Rosebloom, 92 Ill. App. 106.

The main question on the appeal from the decree of May 14, 1907, is whether it is erroneous in changing the provisions of the decree of June 16, 1906, as to joint guardianship of plaintiff in error and defendant in error, and that question is argued in the present case by counsel for defendant in error, and is raised in their cross-assignment of errors, and is also raised by them in their appeal from the decree of May 14, 1907, which appeal has been consolidated with this case for hearing. We are of opinion that the court was without jurisdiction to enforce the provisions of the decree of June 16, 1906, in reference to the joint guardianship of the child, as the order of July 18, 1907, purports to do. The question whether that order should be enforced could not be before the Circuit Court and this court at the same time. Elgin Lumber Co. v. Langman, 23 Ill. App. 250; Smith v. Chytraus, 152 Ill. 664, 669; Helm v. Boone, 6 Marshall (Ky.) 351; Levi v. Karrick, 15 Iowa 444; Boynton v. Foster, 7 Metc. 415; Elliott on Civil Procedure, sec. 541. This author says: "The overwhelming weight of authority is that an appeal, properly perfected, removes a case wholly and absolutely from the trial court, and places it in the higher tribunal. It is difficult to conceive how it could be otherwise, since it is not possible that two courts can have authority over a single case at the same time."

Counsel rely on the provision in the condition of the appeal bond expressed in these words: "And also abide by and comply with the terms of said final decree entered June 16, 1906, during the time said appeal above prayed is pending in said Appellate Court, then the above obligation to be void," etc. Assuming that this condition of the appeal bond of defendant in error is binding on him and his surety, a question which we do not decide, it certainly is not binding on plaintiff in error and cannot be enforced against him. But even

though we should assume that the court had jurisdiction to make the order of July 18, 1907, we would be compelled to reverse the order committing plaintiff in error to jail for contempt. June 19, 1907, a writ of attachment issued, by order of the court, "directed to the sheriff of this county to execute, commanding him that he bring the body of said Jesse O. Steele before the bar of this court, to show cause, if any he has, why he should not be punished for contempt of this court, in wilfully failing and refusing to comply with the order of this court entered herein on July 18, 1907." It appears, by the bill of exceptions, that when plaintiff in error was brought into court on the writ, his attorney asked leave to answer, which the court refused, saying, among other things, "Obey the order first, and then you can make answer." The writ was issued to bring plaintiff in error into court, to show cause, if any he had, why he should not be punished for contempt, and the refusal to permit him to answer and show cause, if any he had, was error. His alleged offense was not committed in the presence of the court, and he had a right to be heard. On this subject, Rapalje, in his work on Contempt, sec. 611, says: "Contempt of court is of two kinds; that which is committed in open court, and that which is committed out of the view and hearing of the court. For the punishment of the first by commitment and fine, no proceeding need be taken contradictorily with the offender. But for the punishment of the latter, by the same means, the offender must be allowed to offer evidence and argument in his defense, otherwise any judgment which the court may pronounce will be absolutely void."

In State v. Judges, 32 La. Ann., year 1880, the court holds that to punish for constructive contempt, without an opportunity to be heard, is contrary to the law of the land, and say: "The charge of contempt should not, in any case, be followed by sentence and imprisonment, unless *after* a rule *to show cause* has been

granted and the party defendant therein heard and permitted to offer evidence and argument. A party in such case may have defenses which the offended authority may not conceive of. Such party would have a right, as any accused in a criminal case, as, for instance, to prove an *alibi* or a want of identity. It is only after such party has been heard that the court has authority to determine whether the act charged as constructive contempt is so, and if such, to punish by fine or imprisonment, or both, or otherwise, the defendant in the process for contempt.''

While it may be the more orderly practice to enter a rule to show cause, we are not prepared to hold that, in this jurisdiction, an attachment may not issue, in the first instance, on a proper showing. In other respects we concur in the language of the Louisiana court.

We do not think it due process of law, or in accordance with the genius of our institutions, to condemn one without an opportunity to be heard, on a charge of constructive contempt, especially when, as in the present case, he is notified by the process served on him, to show cause, if any he has, why he should not be punished. This, to use the language of Mr. Justice Field, in Windsor v. McVeigh, 93 U. S. 274, 278, ''would be like saying to a party, 'Appear and you shall be heard,' and, when he has appeared, saying, 'Your appearance shall not be recognized, and you shall not be heard'.'' See, also, *Ex Parte* Kilgore, 3 Tex. Ct. of Appeals 247.

The decree of May 14, 1907, will be affirmed, and the order of July 18, 1907, ordering Jesse O. Steele to deliver the child, Elizabeth Vinni Steele, to John P. Hohenadel, will be reversed, and the order of July 19, 1907, ordering ''that the said Jesse O. Steele be committed to the common jail of said Cook county, there to remain for a term of thirty days, unless sooner discharged by law,'' will be reversed.

*Decree of May 14, 1907, affirmed, and the order of July 18, 1907, and the order of July 19, 1907, that Jesse O. Steele be committed to jail, will be reversed.*